**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION**

| | |
|---|---|
| **FCCI INSURANCE COMPANY,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No.** |
| **HARAKAS CONSTRUCTION, INC.,** ) | |
| **ON GRADE, LLC,** ) | |
| **HARAKAS DEVELOPMENT, LLC,** ) | |
| **NITRO GROUP, INC.,** ) | |
| **NICHOLAS HARAKAS, and** ) | |
| **ANNEKE HARAKAS** ) | |
| ) | |
|     **Defendants.** ) | |

---

## COMPLAINT

---

Plaintiff FCCI Insurance Company ("FCCI" or "Surety"), by and through counsel, states the following for its Complaint against Defendants Harakas Construction, Inc., ("Harakas Construction" or "Principal"), On Grade, LLC, Harakas Development, LLC, Nitro Group, Inc., Nicholas Harakas, and Anneke Harakas (the Defendants collectively, the "Indemnitors" or "Undersigned").

## I.    PARTIES

1.    FCCI is a Florida corporation with its principal place of business in the State of Florida, and FCCI is registered and/or authorized to transact business in the State of Tennessee. FCCI's principal place of business is located in Sarasota, Florida, the location from which FCCI's high-level officers direct, control, and coordinate FCCI's activities. Thus, FCCI is a citizen of the State of Florida for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

2.     Upon information and belief, Harakas Construction is a Tennessee corporation with its principal place of business at its principal office at 1138 New Highway 7, Columbia, TN 38401-6866, at which address Harakas Construction can be served with process through its Registered Agent Nicholas Harakas. Thus, Harakas Construction is a citizen of the State of Tennessee for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

3.     Upon information and belief, On Grade, LLC is a member-managed limited liability company formed under Tennessee law, whose sole member is a citizen of the State of Tennessee. Upon information and belief, On Grade, LLC may be served with process through its Registered Agent Nicholas Harakas at 1138 New Highway 7, Columbia, TN 38401-6866. Thus, On Grade, LLC is a citizen of the State of Tennessee for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

4.     Upon information and belief, Harakas Development, LLC is a member-managed limited liability company formed under Tennessee law, whose sole member is a citizen of the State of Tennessee. Upon information and belief, Harakas Development, LLC may be served with process through its Registered Agent Nicholas Harakas at 1138 New Highway 7, Columbia, TN 38401-6866. Thus, Harakas Development, LLC is a citizen of the State of Tennessee for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

5.     Upon information and belief, Nitro Group, Inc. is a Tennessee corporation with its principal place of business located at its principal office at 1138 New Highway 7, Columbia, TN 38401-6866, at which address Nitro, Inc. can be served with process through its Registered Agent Nicholas Harakas. Thus, Nitro, Inc. is a citizen of the State of Tennessee for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

6.      Upon information and belief, Nicholas Harakas is a citizen of the State of Tennessee.

7.      Upon information and belief, Anneke Harakas is a citizen of the State of Tennessee.

## II.      JURISDICTION & VENUE

8.      This Honorable Court possesses original jurisdiction over the claims asserted in FCCI's Complaint pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and the matter in controversy is between citizens of different states (Florida Plaintiff and Tennessee Defendants).

9.      This Honorable Court possesses the power to declare the respective rights and other legal relations of FCCI and the Defendants/Indemnitors as requested herein pursuant to 28 U.S.C. § 2201(a).

10.      This Honorable Court possesses the authority to award the injunctive relief requested herein pursuant to Rule 65 of the Federal Rules of Civil Procedure.

11.      Venue is proper in the United States District Court for the Middle District of Tennessee, Columbia Division, pursuant to 28 U.S.C. § 123(b)(2) and 28 U.S.C. § 1391(b) because the Defendants/Indemnitors reside in the Middle District of Tennessee, Columbia Division (Maury County).

## III.      FACTUAL ALLEGATIONS

### The Indemnity Agreement

12.      At all relevant times, Harakas Construction was engaged in the construction business and was sometimes required to furnish surety bonds in connection with its construction contracts.

13.    As a condition of FCCI's issuance of surety bonds at their request, the Indemnitors executed the General Indemnity Agreement attached hereto as **Exhibit 1** (the "Indemnity Agreement") in favor of FCCI on or about December 15, 2022.

14.    The Indemnity Agreement defines "Bond" as "[a]ny bond, undertaking, contract of suretyship, guaranty or indemnity, or other contractual obligation, executed by Surety on, before or after the date of [the Indemnity Agreement], and any riders, endorsements, extensions, addendums, continuations, renewals, substitutions, increases or decreases in penal sum, reinstatements or replacements thereto."

15.    The Indemnity Agreement defines "Principal" as "[t]he person(s) or entity(ies) who sign [the Indemnity Agreement] or any Affiliates, parents, divisions, subsidiaries, successors, assigns, partners, co-venturers, joint venture partners, consortiums, limited liability companies, trust, estate, other legal entity or any one or combination thereof, or their successors in interest, whether alone or in joint venture with others named herein or not named herein."

16.    The Indemnity Agreement defines "Surety" as "FCCI Insurance Company, its Affiliates, parents, divisions, subsidiaries, successors, assigns, partners, reinsurers or any one or combination thereof, its successors in interest, and any other person or entity which it may procure to act as surety or co-surety on any bond or any other person or entity who executes any bond at its request."

17.    The Indemnity Agreement defines "Contract" as "[a]ny agreement, obligation or undertaking of Principal, the performance of which is bonded or guaranteed by Surety."

18.    The Indemnity Agreement defines "Undersigned/Indemnitor," "Undersigned," and/or "Indemnitor" as follows:

> Any Principal(s) as herein defined, and each and every person or entity, separately, and any and all such persons and entities collectively, jointly, severally, and

individually who or may be added to [the Indemnity Agreement] via rider or amendment that execute [the Indemnity Agreement] as an Indemnitor, and any and all of its present or future, direct or indirect, their parents, Affiliates, divisions, subsidiaries, successors, assigns, partners, co-venturers, joint venture partners, consortiums, trust, estate, and/or limited liability companies

19. The Indemnity Agreement defines "Obligee" as "[t]he party to whom Surety is guaranteeing that Principal will fulfill Principal's obligations and for whose protection the bond is written."

20. With respect to the meaning of term "Good Faith," the Indemnity Agreement states, "'Good Faith': Shall mean, with respect to an act, omission, or exercise of discretion by Surety, honesty in fact and the absence of willful misfeasance. Neither negligence nor gross negligence shall be deemed to be the absence of good faith, nor shall either be deemed to be bad faith."

21. With respect to the Indemnitors' duty to exonerate, indemnify, keep indemnified, and save FCCI harmless from and against all liabilities, losses, etc., Paragraph IV.A. of the Indemnity Agreement states:

Undersigned agree to exonerate, indemnify, keep indemnified, and save harmless Surety from and against any and all demands, liabilities, loss, costs, penalties, obligations, interest, damages or expenses of whatever nature or kind, as well as fees of attorneys, engineering and any other outside consulting or expert fees, and all other expenses, costs and fees incurred:

1. by reason of being requested to execute or procure the execution of any Bond;

2. by having executed or procured the execution of any Bond;

3. by reason of any claim, demand, notice, action, lawsuit or cause of whatsoever kind or nature made, asserted or threatened against Surety and in any way related to a Bond;

4. investigating claims or potential claims and adjusting claims;

5. procuring or attempting to procure the discharge of Bonds;

6. by reason of the failure of Undersigned to perform or comply with any of the covenants and conditions of [the Indemnity Agreement];

7. attempting to recover losses or expenses from Undersigned or third parties, whether Surety shall have paid out any such sums or any part thereof; and/or

8. in enforcing any of the covenants or conditions of [the Indemnity Agreement].

22. With respect to the Indemnitors' duty to exonerate, indemnify, keep indemnified, and save FCCI harmless from and against all liabilities, losses, etc. upon demand, whether or not FCCI has made any payment, Paragraph IV.B. of the Indemnity Agreement states:

> Payment by reason of the aforesaid clauses shall be made to Surety by Undersigned promptly, upon demand by Surety, whether or not Surety shall have made any payment therefor and, at Surety's sole option. Undersigned further agree that the liability of Undersigned shall extend to and include an obligation to pay to Surety both pre- and post-judgment interest on any payments made by Surety as a result of having issued any Bond, at the rate of ten percent (10%) per annum or the maximum rate allowed by law, whichever is lower, calculated from the date such payment is made by Surety.

23. With respect to the method of establishing the Indemnitors' liability to FCCI in this action, Paragraph IV.D. of the Indemnity Agreement states:

> In any claim or suit hereunder and in any and all matters arising between Undersigned and Surety, an itemized statement of the aforesaid loss and expense, sworn to through affidavit or otherwise by a representative of Surety, or the vouchers or other evidence (including copies of checks or printouts from Surety's internal records) of disbursement by Surety, shall be prima facie evidence of the fact and extent of the liability hereunder of Undersigned.

1. Surety shall have the right to reimbursement of its expenses, costs, premiums, interest, consultants' or experts' fees, other professionals' fees and attorneys' fees hereunder, irrespective of whether any Bond loss payment has been made by Surety.

2. In any suit between any Undersigned and Surety under [the Indemnity Agreement] or otherwise, Surety shall be entitled to recover its further expenses, attorneys' fees, and fees of consultants or experts incurred in such suit and in collecting any judgment obtained against any Undersigned. Said attorneys' fees shall include fees incurred up to and including any appellate proceedings.

24.     With respect to FCCI's right to indemnity/reimbursement of all disbursements made under the belief that liability, necessity, or expediency exists, Paragraph IV.C. of the Indemnity Agreement states:

> In the event of any payment by Surety, Undersigned further agree that in any accounting between Surety and Principal, or between Surety and Indemnitor, or either or both of them, Surety shall be entitled to charge for any and all disbursements made by it under the belief that it is, or was, or might be liable for the sums and amounts so disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed.

25.     With respect to the events and/or omissions constituting a "Default" thereunder, Paragraph V of the Indemnity Agreement states, in relevant part:

> DEFAULT- There shall be a default with respect to a Contract, and hereunder, if any of the following occur (each a "Default"):
>
> . . . .
>
> D.     Principal fails to pay for any labor, equipment, materials, taxes, contributions or other services or obligations, or any indebtedness of any Principal to Surety or to any Obligee, when such payment is due, or when such payment is demanded by Surety.
>
> E.     Principal diverts any Contract funds from any Contract to uses not in furtherance of that Contract prior to the complete discharge of Surety.
>
> F.     Any one of Undersigned breaches any provision of [the Indemnity Agreement], including but not limited to the failure to pay any premium due to Surety, with such breach(es) determined by Surety in its sole and absolute discretion.
>
> . . . .
>
> M.     Any claim is made against any Bond. Surety shall have the right in its sole and absolute discretion to determine when a demand, notice, request or other communication regarding a Bond constitutes a claim against the Bond.
>
> . . . .
>
> O.     Any suit or other judicial, quasi-judicial, or administrative proceeding, including mediation, arbitration, or other form of alternative dispute

resolution being commenced against Surety as it relates to any Bond, Contract, or Indemnitor.

P.    Receipt of any information by Surety or the existence of any facts relating to the financial condition of any of Undersigned, that causes Surety, in its sole and absolute discretion, to believe that such Indemnitor may be unable to perform or meet any of their obligations under [the Indemnity Agreement].

. . . .

S.    The establishment by Surety, in its sole and absolute discretion, of any reserve in any amount in connection with any Bond.

T.    Undersigned fail, upon demand from Surety, to procure the discharge of Surety from any claim or threatened claim against Surety that arises as a result of Surety's execution of any Bond or its decision to decline to execute any Bond.

26.    With respect to FCCI's rights upon the occurrence of an event or condition of "Default" thereunder, Paragraph VI.A. of the Indemnity Agreement states, in relevant part:

In the event of Default as defined above, Surety shall have the absolute right, at its sole option and in its sole discretion, to take any or all of the following actions at the expense of Undersigned.

1.    Notify any Obligee in writing, as Principal's attorney-in-fact, that Principal is in default with respect to its Contract.

2.    Direct any Obligee in writing (including the Federal Government on projects governed by 40 U.S.C. § 270a, et seq.), as Principal's attorney-in-fact, to make or direct all checks or wire transfers payable to Principal, but mail or wire transfer them directly to Surety or Surety's designee.

. . . .

6.    Notify any Obligee of Surety's rights to assignment under Paragraph IX hereof.

7.    Require that any Obligee withhold Contract funds unless and until Surety consents to their release.

8.    Require any Obligee to make payment by joint check to Principal and any claimant.

9.    File an immediate suit to enforce the provisions of [the Indemnity Agreement].

10.    Determine in its sole discretion whether any claims shall be paid, compromised, defended, prosecuted or appealed, regardless of whether or not suit is actually filed or commenced against Surety upon such claim. Absent fraudulent intent on the part of Surety, Undersigned agree to be conclusively and unconditionally bound by Surety's determination.

11.    Pay any Bond(s), in full or in part.

12.    Incur such expenses in handling a claim as it shall deem necessary, including but not limited to the expense for investigative, accounting, engineering and legal services.

. . . .

This is not intended to be an exhaustive list of all rights afforded to Surety under [the Indemnity Agreement], and is not intended to limit any other rights available to Surety, at law or in equity, under contract, statute or common law.

27.    With respect to FCCI's right, in its sole and absolute discretion, to select counsel of its own choosing in relation to any potential claim, Paragraph VI.A. of the Indemnity Agreement states:

Surety shall have the foregoing rights, irrespective of the fact that Undersigned may have assumed, or offered to assume, the defense of Surety upon such claim. Surety is under no obligation to accept a tender of defense from Undersigned, and at all times shall, in its sole and absolute discretion, have the right to select counsel of its own choosing, at the Undersigneds' expense. Should Surety agree to allow Undersigned to assume Surety's defense in any matter, said tender of defense may be revoked at any time.

28.    With respect to the conditions precedent the Indemnitors must satisfy in conjunction with a request that FCCI resist and litigate any claim, Paragraph VI.C. of the Indemnity Agreement states:

If Undersigned desire that a claim or demand against Surety, to which Surety has determined, in its sole and absolute discretion, that a meritorious defense may exist, be resisted and litigated, Undersigned shall:

1.    Give written notice to Surety to this effect,

2.    Simultaneously deposit with Surety cash or other equivalent collateral as defined in Paragraph VII herein satisfactory to Surety in an amount that Surety determines, in its sole and absolute discretion, is sufficient to cover

the claim or demand and interest thereon to the probable date of disposition, and

3.      Either deposit simultaneously with Surety cash or other equivalent collateral as defined in Paragraph VII herein satisfactory to Surety in an amount sufficient to cover the expenses and fees of defense (including the fees of attorneys, experts, and consultants), or take over the resistance and litigation of the claim; provided, however, Surety shall have the right to be represented by separate counsel of its choice and Undersigned understand that, as agreed in Paragraph IV herein, they shall be obligated to indemnify Surety for attorneys' fees and appellate attorneys' fees and appellate attorneys' fees incurred, as payment for such fees becomes due if Surety chooses to be represented by separate counsel of its choice.

29.     With respect to the Indemnitors' duty to deposit cash or other equivalent property with FCCI upon demand, Paragraph VII.A. of the Indemnity Agreement states:

If a claim is made against Surety, whether disputed or not, and upon demand from Surety, Undersigned shall deposit with Surety cash or other equivalent property in an amount acceptable to Surety, in its sole and absolute discretion, as collateral security, in sufficient amount to protect Surety with respect to such claim or potential claims and any expense or attorneys' fees. Such collateral will be held or utilized by Surety, at its sole and absolute discretion, until Surety has received written evidence of its complete discharge from such claim or potential claims, and until it has been fully reimbursed for all loss, cost, court cost, expense, experts' fees, consultants' fees, attorneys' fees, appellate attorneys' fees, and unpaid premiums.

30.     With respect to the Indemnitors' acknowledgment that their failure to collateralize FCCI upon demand would cause irreparable damage and loss for which FCCI would lack an adequate remedy at law, Paragraphs VII.B. of the Indemnity Agreement states:

Undersigned specifically acknowledge and agree that the obligation for the posting of collateral with Surety as established in this Paragraph VII is a material inducement to Surety's agreement to execute any Bond about which the parties hereto specifically bargained, is intended to provide Surety with certain protections, and that irreparable damage and loss for which there is no adequate remedy at law will be incurred by Surety in the event Undersigned fail to comply with such obligation upon demand from Surety. Undersigned agree that the failure to provide collateral security in the amount demanded by Surety shall be deemed to be evidence that Undersigned are dissipating assets and/or taking action to place their assets beyond the reach of Surety such that the assets would not be available for collection by Surety after litigation to enforce [the Indemnity Agreement]. Accordingly, Undersigned agree that Surety shall be entitled to immediate legal and

equitable relief from any court of competent jurisdiction in the event of Undersigned's failure to timely post collateral upon demand by Surety, specifically including but not limited to the judicial entry of temporary and/or permanent injunctions and/or the awarding of specific performance to Surety.

31.     With respect to the Indemnitors' acknowledgment and declaration that all proceeds of the contracts covered by FCCI's bonds constitute trust funds for the benefit and payment of obligations for which FCCI would be liable under those Bonds, Paragraph VIII of the Indemnity Agreement states:

Undersigned agree and hereby expressly declare that all funds due or to become due to Principal under any Contract covered by a Bond are trust funds in which Surety has an interest, whether in the possession of Principal or another, for the benefit and payment of all persons to whom Principal incurs obligations in the performance of such Contract and for which Surety would be liable under the Bond. If Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds which said trust funds also inure to the benefit of Surety for any liability or loss it may have or sustain under any Bond, and [the Indemnity Agreement] and declaration shall also constitute notice of such trust. If Surety satisfies any liability on any Bond, Surety shall be entitled to assert the claim of the claimant to the trust funds, in its own name or that of the claimant. Any Principal shall, upon demand of Surety and in implementation of the trust or trusts hereby created, deposit or cause to be deposited said trust funds either in an account or separate accounts to be held by Surety and/or in an account or separate accounts with a bank, third-party contract escrow agent or similar depository approved by Surety. Any or all of the aforementioned account or separate accounts shall be designated a trust account or trust accounts for the deposit of such trust funds. Undersigned agree and hereby acknowledge that the withdrawal(s) from any such trust account(s) shall be signed or executed by a representative of Surety and/or any other designated signator as may be directed by Surety. Said trust(s) shall terminate on the payment by Undersigned of all of the obligations for the payment of which the trust or trusts are hereby created, or upon the expiration of twenty (20) years from the date hereof, whichever shall first occur.

32.     With respect to the Indemnitors' duty to immediately turn over to and/or grant the Surety access to their books, records, accounts, etc. upon demand, Paragraph XI of the Indemnity Agreement states:

At any time and until such time as Surety has been furnished with conclusive evidence that its liability under any Bond is terminated and/or until such time as Surety has been indemnified as provided in Paragraph IV above, and upon Surety's request, Undersigned shall immediately turn over and grant access to Surety, or its

designee, as often as requested and at a time and place and in a manner determined by Surety, such books, records, accounts, documents, computer software and other electronically-stored financial and other information of each of Undersigned, as and when requested by Surety that Surety believes, in its discretion, it will need to protect its interests and rights referenced throughout [the Indemnity Agreement]. Time is of the essence, and Surety shall have such right of free access at any time of day and any day of the week. Undersigned acknowledge and agree that Surety's right of access as specified herein shall not cease or otherwise be impaired by virtue of the institution, defense or prosecution of an action in law or equity related to the terms of [the Indemnity Agreement]. Undersigned specifically acknowledge and agree that the obligation for the production of such books, records, accounts, documents, computer software and other electronically-stored financial and other information of each of Undersigned is intended to provide Surety with certain protections, and that irreparable damage and loss will be incurred by Surety in the event Undersigned fail to comply with such obligation. Undersigned agree that Surety shall be entitled to immediate legal and equitable relief from any court of competent jurisdiction in the event of Undersigned's failure to timely produce such books, records, accounts, documents, computer software and other electronically-stored financial and other information of each of Undersigned, specifically including but not limited to the judicial entry of temporary and/or permanent injunctions and/or the awarding of specific performance to Surety.

33.     With respect to the Indemnitors' duty to procure FCCI's discharge of liability in relation to any bond upon demand, Paragraph XII.D. of the Indemnity Agreement states, "Undersigned shall, on request of Surety, procure the discharge of Surety from any Bond, and all liability by reason thereof. Surety shall have every right, defense, or remedy which a personal surety without compensation would have, including the right of exoneration."

34.     With respect to FCCI's and the Indemnitors' mutual waiver of any right they may otherwise possess to a jury trial, Paragraph XVI.B. of the Indemnity Agreement states:

SURETY AND UNDERSIGNED, TO THE EXTENT PERMITTED BY LAW, HEREBY WAIVE TRIAL BY JURY IN (AND AGREE THAT ANY CLAIMS UPON THIS AGREEMENT SHALL BE TRIED IN A BENCH TRIAL BY A JUDGE IN A COURT OF COMPETENT JURISDICTION HAVING JURISDICTION OVER SARASOTA COUNTY, FLORIDA) ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY SURETY AGAINST ANY ONE OR COMBINATION OF UNDERSIGNED OR BROUGHT BY ANY ONE OR COMBINATION OF UNDERSIGNED AGAINST SURETY ON ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT, ANY BOND ISSUED BY SURETY OR REQUESTED AND/OR ANY CLAIM OF INJURY OR DAMAGE.

UNDERSIGNED HEREBY ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY THEIR OWN COUNSEL WITH RESPECT TO THE TERMS OF THIS AGREEMENT AND SPECIFICALLY WITH RESPECT TO THE TERMS OF THIS PARAGRAPH CONCERNING THE WAIVER OF SURETY'S AND UNDERSIGNEDS' RIGHT TO TRIAL BY JURY.

### The Payment Bond and Volunteer Paving's Claim Against It

35.    In reliance upon the Indemnitors' execution of the Indemnity Agreement and FCCI's rights thereunder, FCCI issued Subcontract Labor and Material Payment Bond No. 8801282, a copy of which is attached hereto as **Exhibit 2** (the "Payment Bond"), at the request of the Indemnitors in the penal sum of $7,006,820.22.

36.    The Payment Bond names Harakas Construction as the Principal, names FCCI as the Surety, and names United States Fire Insurance Company (the "Obligee") as the obligee.

37.    The Payment Bond relates to Harakas Construction's contract with the Obligee (the "Contract") on a construction project identified in the Payment Bond as "Caroll at Cane Ridge Apartments, 0 Old Franklin Road, Antioch, TN 37013, Project # CDC 21-126 – scope includes storm and sanitary sewer, water main and services, mass grading, bio-retention ponds, concrete flatwork and asphalt paving" (the "Project").

38.    Upon information and belief, Volunteer Paving, LLC ("Volunteer Paving") furnished certain labor and/or materials to Harakas Construction for use on the Project.

39.    As reflected by the Affidavit of Claim dated July 17, 2023, and attached hereto as **Exhibit 3**, Volunteer Paving has asserted a claim against FCCI under the Payment Bond in the principal amount of $1,047,800.32 relative to the labor and/or materials Volunteer Paving furnished to Harakas Construction for use on the Project.

### The Indemnitors' Default Under the Indemnity Agreement

40.    Volunteer Paving's claim against the Payment Bond constitutes a Default under Paragraph V.M. of the Indemnity Agreement.

41.     To the extent Harakas Construction has failed to pay Volunteer Paving for any labor and/or materials when such payment was due, that would constitute a Default under Paragraph V.D. of the Indemnity Agreement.

42.     To the extent Harakas Construction diverted proceeds of the Contract to uses other than paying Volunteer Paving or satisfying obligations covered under the Payment Bond, that would constitute a Default under Paragraph V.E. of the Indemnity Agreement.

43.     As reflected by the September 10, 2023, letter attached hereto as **Exhibit 4,** and as set forth more fully therein, FCCI demanded that the Indemnitors take the following actions pursuant to the Indemnity Agreement:

(a)     deposit cash or a clean and irrevocable letter of credit from an acceptable bank with FCCI in the amount of $1,122,800.32 as collateral for FCCI's potential liability, including interest and attorneys' fees, arising out of Volunteer Paving's claim against the Payment Bond;

(b)     turn over and/or grant FCCI or its designee(s) access to the Indemnitors' books, records, accounts, documents, computer software and other electronically-stored financial and other information including, but not limited to, any information relating to Harakas Construction's receipt and/or disbursement of funds earned on the Project; and

(c)     furnish FCCI any documents or electronically stored information the Indemnitors believe to support any meritorious defenses that Harakas Construction may possess in relation to Volunteer Paving's claim;

(d)     procure the discharge of FCCI's potential liability arising from Volunteer Paving's claim against the Payment Bond.

44.     Despite FCCI's demand, the Indemnitors have not deposited a penny of collateral with FCCI, which constitutes a Default under Paragraph V.F. of the Indemnity Agreement.

45.     Despite FCCI's demand, the Indemnitors have not turned over and/or granted FCCI or its designee(s) access to the Indemnitors' books, records, accounts, etc., which constitutes a Default under Paragraph V.F. of the Indemnity Agreement.

46.     Despite FCCI's demand, the Indemnitors have not furnished FCCI any documents or electronically stored information the Indemnitors believe to support any meritorious defenses that Harakas Construction may possess in relation to Volunteer Paving's claim, which constitutes a Default under Paragraph V.F. of the Indemnity Agreement.

47.     Despite FCCI's demand, the Indemnitors have not procured the discharge of FCCI's potential liability arising from Volunteer Paving's claim against the Payment Bond, which constitutes a Default under Paragraph V.T. of the Indemnity Agreement.

## IV.     CAUSES OF ACTION

### Count I — Specific Performance (*i.e.*, Deposit of Collateral)

48.     FCCI hereby restates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

49.     As more fully set forth in Paragraph VII.A. of the Indemnity Agreement, the Indemnitors are obligated to, upon demand, deposit with FCCI cash or other equivalent property in an amount acceptable to FCCI, in its sole and absolute discretion, as collateral security, in sufficient amount to protect FCCI with respect to Volunteer Paving's claim against the Payment Bond and any expense or attorneys' fees — whether Volunteer Paving's claim is disputed or not.

50.     As more fully set forth in Paragraph VII.B. of the Indemnity Agreement, the Indemnitors have specifically acknowledged and agreed that their failure to collateralize FCCI upon demand shall irreparably damage FCCI for which FCCI would not possess an adequate remedy at law.

51.     As more fully set forth in Paragraph VII.B. of the Indemnity Agreement, the Indemnitors have agreed that FCCI is entitled to immediate legal and equitable relief in the event of the Indemnitors' failure to timely post collateral upon demand by FCCI, specifically including

but not limited to the judicial entry of temporary and/or permanent injunctions and/or the awarding of specific performance to FCCI.

52. Though FCCI fully reserves any and all of its rights, remedies, defenses, etc. under the Payment Bond and the Indemnity Agreement, FCCI has determined that the deposit of collateral in the amount of $1,122,800.32 is necessary to protect FCCI with respect to Volunteer Paving's claim against the Payment Bond and any expenses or attorneys' fees.

53. As reflected by Exhibit 4, FCCI has demanded that the Indemnitors deposit cash or a clean and irrevocable letter of credit from an acceptable bank with FCCI in the amount of $1,122,800.32 as collateral for FCCI's potential liability, including interest and attorneys' fees, arising out of Volunteer Paving's claim against the Payment Bond.

54. Despite FCCI's demand, however, the Indemnitors have not deposited a penny of collateral with FCCI.

55. The Indemnitors' failure to deposit collateral with FCCI constitutes a Default under the Indemnity Agreement and a material breach of the Indemnity Agreement.

56. As the Indemnitors acknowledged and agreed under Paragraph VII.B. of the Indemnity Agreement, FCCI lacks an adequate remedy at law in relation to the Indemnitors' material breach of the Indemnity Agreement by failing to deposit collateral with FCCI.

57. As the Indemnitors acknowledged and agreed under Paragraph VII.B. of the Indemnity Agreement, the Indemnitors' material breach of the Indemnity Agreement by failing to deposit collateral has caused irreparable harm to FCCI.

58. As the Indemnitors acknowledged and agreed under Paragraph VII.B. of the Indemnity Agreement, FCCI is entitled to immediate legal and equitable relief relative to the Indemnitors' failure to timely post collateral upon demand by FCCI, specifically including but not

limited to the judicial entry of temporary and/or permanent injunctions and/or the awarding of specific performance to FCCI.

59.     Specifically enforcing the Indemnitors' collateral obligations will also further a number of public interests including, but not limited to, strengthening the sanctity of unambiguous contracts, fostering confidence in the surety industry, and ensuring the solvency of sureties such as FCCI.

60.     Therefore, FCCI is entitled to the entry of an injunction/judgment compelling the Indemnitors, jointly and severally, to specifically perform their obligation to deposit cash or an irrevocable letter of credit in the amount of $1,122,800.32 as collateral security with respect to Volunteer Paving's claim against the Payment Bond.

### Count II — Specific Performance (Access to Books, Records, Accounts, Etc.)

61.     FCCI hereby restates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

62.     As more fully set forth in Paragraph XI of the Indemnity Agreement, the Indemnitors are obligated to, upon request and at any time and until such time as FCCI has been furnished with conclusive evidence that its liability under the Payment Bond is terminated and/or until such time the Indemnitors have fully indemnified FCCI, immediately turn over and grant access to FCCI, or its designee, as often as requested and at a time and place and in a manner determined by FCCI, such books, records, accounts, documents, computer software and other electronically-stored financial and other information of each of the Indemnitors, as and when requested by FCCI that FCCI believes, in its discretion, it will need to protect its interests and rights referenced throughout the Indemnity Agreement.

63.     As more fully set forth in Paragraph XI of the Indemnity Agreement, the Indemnitors specifically acknowledged and agreed that time is of the essence and FCCI shall have such right of free access to the Indemnitors' books, records, accounts, etc. at any time of day and any day of the week.

64.     As more fully set forth in Paragraph XI of the Indemnity Agreement, the Indemnitors specifically acknowledged and agreed that the Indemnitors' obligation to furnish access and/or produce their books, records, accounts, documents, computer software and other electronically-stored financial and other information is intended to provide FCCI with certain protections, and that irreparable damage and loss will be incurred by FCCI in the event the Indemnitors fail to comply with such obligation.

65.     As more fully set forth in Paragraph XI of the Indemnity Agreement, the Indemnitors specifically agreed that FCCI shall be entitled to immediate legal and equitable relief from any court of competent jurisdiction in the event of the Indemnitors' failure to timely produce such books, records, accounts, documents, computer software and other electronically-stored financial and other information of each of the Indemnitors, specifically including but not limited to the judicial entry of temporary and/or permanent injunctions and/or the awarding of specific performance to FCCI.

66.     As reflected by Exhibit 4, FCCI has demanded that the Indemnitors turn over and/or grant FCCI or its designee(s) access to the Indemnitors' books, records, accounts, documents, computer software and other electronically-stored financial and other information including, but not limited to, any information relating to Harakas Construction's receipt and/or disbursement of funds earned on the Project.

67. Despite FCCI's demand, however, the Indemnitors have not turned over and/or granted FCCI or its designee(s) access to the Indemnitors' books, records, accounts, documents, computer software and other electronically-stored financial and other information.

68. The Indemnitors' failure to turn over and/or grant FCCI or its designee(s) access to the Indemnitors' books, records, accounts, documents, computer software and other electronically-stored financial and other information constitutes a Default under the Indemnity Agreement and a material breach of the Indemnity Agreement.

69. As the Indemnitors acknowledged and agreed under Paragraph XI of the Indemnity Agreement, the Indemnitors' material breach of the Indemnity Agreement by failing to turn over and/or grant FCCI or its designee(s) access to the Indemnitors' books, records, accounts, documents, computer software and other electronically-stored financial and other information has caused irreparable harm to FCCI.

70. As the Indemnitors acknowledged and agreed under Paragraph XI of the Indemnity Agreement, FCCI is entitled to immediate legal and equitable relief relative to the Indemnitors' failure to timely produce their books, records, accounts, documents, computer software and other electronically-stored financial and other information, specifically including but not limited to the judicial entry of temporary and/or permanent injunctions and/or the awarding of specific performance to FCCI.

71. Specifically enforcing the Indemnitors' collateral obligations will also further a number of public interests including, but not limited to, insuring that sureties such as FCCI will have access to bargained-for information that is critical to mitigating exposure, maximizing recovery, and preventing sureties such as FCCI from incurring losses that otherwise could have been avoided only to be left with no meaningful recourse against their principals/indemnitors.

72.     Therefore, FCCI is entitled to the entry of an injunction/judgment compelling the Indemnitors, jointly and severally, to specifically perform their obligation to turn over and grant access to FCCI, or its designee, as often as requested and at a time and place and in a manner determined by FCCI, such books, records, accounts, documents, computer software and other electronically-stored financial and other information of each of the Indemnitors.

### Count III — Breach of Contract *(i.e.*, damages)

73.     FCCI hereby restates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

74.     As more fully set forth in Paragraph IV.A. of the Indemnity Agreement, the Indemnitors agreed to exonerate, indemnify, keep indemnified, and save harmless FCCI from and against any and all demands, liabilities, losses, costs, penalties, obligations, interest, damages or expenses of whatever nature or kind, as well as fees of attorneys, engineering and any other outside consulting or expert fees, and all other expenses, costs and fees incurred (a) by having executed the Payment Bond, (b) by reason of Volunteer Paving's claim against the Payment Bond, (c) investigating Volunteer Paving's claim against the Payment Bond, (d) procuring or attempting to procure the discharge of the Payment Bond, (e) by reason of the Indemnitors' failure to perform or comply with any covenants and conditions of the Indemnity Agreement, and (f) in enforcing the covenants and conditions of the Indemnity Agreement.

75.     As more fully set forth in Paragraph IV.B. of the Indemnity Agreement, the Indemnitors must make the payment(s) necessary to exonerate, indemnify, keep indemnified, and save harmless FCCI from and against any and all demands, liabilities, losses, etc. promptly upon FCCI's demand — whether or not FCCI shall have made any payment therefor.

76. As more fully set forth in Paragraph IV.B. of the Indemnity Agreement, the Indemnitors are obligated to indemnify/reimburse FCCI for all disbursements it makes under the belief that it is, or was, or might be liable for the sums and amounts so disbursed or that it was necessary or expedient to make such disbursements — whether or not such liability, necessity or expediency existed.

77. To date, FCCI has incurred and continues to incur liabilities, losses, costs, expenses, attorneys' fees, etc. (a) by having executed the Payment Bond, (b) by reason of Volunteer Paving's claim against the Payment Bond, (c) investigating Volunteer Paving's claim against the Payment Bond, (d) procuring or attempting to procure the discharge of the Payment Bond, (e) by reason of the Indemnitors' failure to perform or comply with any covenants and conditions of the Indemnity Agreement, and (f) in enforcing the covenants and conditions of the Indemnity Agreement.

78. However, the Indemnitors have failed to exonerate, indemnify, keep indemnified, and save harmless FCCI from and against the liabilities, losses, costs, expenses, attorneys' fees, etc. that FCCI has incurred and continues to incur.

79. The Indemnitors' failure to exonerate, indemnify, keep indemnified, and save harmless FCCI from and against the liabilities, losses, costs, expenses, attorneys' fees, etc. that FCCI has incurred and continues to incur constitutes a material breach of the Indemnity Agreement.

80. FCCI has sustained damages as a proximate result of the Indemnitors' material breach of the Indemnity Agreement in an amount to be proven at trial.

81. Therefore, FCCI is entitled to the entry of judgment against the Indemnitors, jointly and severally, in an amount sufficient to fully exonerate, indemnify, keep indemnified, and save harmless FCCI from and against any and all demands, liabilities, loss, costs, penalties, obligations,

interest, damages or expenses of whatever nature or kind, as well as fees of attorneys, engineering and any other outside consulting or expert fees, and all other expenses, costs and fees incurred (a) by having executed the Payment Bond, (b) by reason of Volunteer Paving's claim against the Payment Bond, (c) investigating Volunteer Paving's claim against the Payment Bond, (d) procuring or attempting to procure the discharge of the Payment Bond, (e) by reason of the Indemnitors' failure to perform or comply with any covenants and conditions of the Indemnity Agreement, and (f) in enforcing the covenants and conditions of the Indemnity Agreement.

WHEREFORE, PREMISES CONSIDERED, FCCI prays for the following relief:

1. For the issuance of process requiring the Indemnitors to answer FCCI's Complaint;

2. On Count I, the entry of an injunction/judgment compelling the Indemnitors, jointly and severally, to specifically perform their obligation to deposit cash or an irrevocable letter of credit in the amount of $1,122,800.32 as collateral security with respect to Volunteer Paving's claim against the Payment Bond;

3. On Count II, the entry of an injunction/judgment compelling the Indemnitors, jointly and severally, to specifically perform their obligation to turn over and grant access to FCCI, or its designee, as often as requested and at a time and place and in a manner determined by FCCI, such books, records, accounts, documents, computer software and other electronically-stored financial and other information of each of the Indemnitors;

4. On Count III, the entry of judgment against the Indemnitors, jointly and severally, in an amount sufficient to fully exonerate, indemnify, keep indemnified, and save harmless FCCI from and against any and all demands, liabilities, loss, costs, penalties, obligations, interest, damages or expenses of whatever nature or kind, as well as fees of attorneys, engineering and any other outside consulting or expert fees, and all other expenses, costs and fees incurred (a) by having executed the Payment Bond, (b) by reason of Volunteer Paving's claim against the Payment Bond, (c) investigating Volunteer Paving's claim against the Payment Bond, (d) procuring or attempting to procure the discharge of the Payment Bond, (e) by reason of the Indemnitors' failure to perform or comply with any covenants and conditions of the Indemnity Agreement, and (f) in enforcing the covenants and conditions of the Indemnity Agreement; and

5. For such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause including, but not limited to, pre-judgment and post-judgment interest.

Respectfully submitted,

*/s/ Jarrod W. Stone*
Jarrod W. Stone, BPR No. 023915
MANIER & HEROD
1201 Demonbreun Street, Ste. 900
Nashville, Tennessee 37203
Phone: (615) 244-0030
Fax: (615) 242-4203
JStone@ManierHerod.com
Attorneys for FCCI Insurance Company